IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

KEMARR PRICE,                            :
                                         :
            Movant/Defendant,            :
                                         :
      v.                                 :      Criminal Action No. 21-32-GBW-1
                                         :      Civil Action No. 22-1493-GBW
                                         :
UNITED STAES OF AMERICA,                 :
                                         :
            Respondent/Plaintiff.        :

_____

Kemarr Price.  *Pro se* Movant.

Eli H. Klein, Assistant United States Attorney, United States Department of
Justice, Wilmington, Delaware.  Attorney for Respondent.

_____

### **MEMORANDUM OPINION**[1]

December 6, 2024
Wilmington, Delaware

_____

[1]This case was re-assigned to the undersigned's docket on September 12, 2022.

Williams, District Judge:

Pending before the Court is Movant Kemarr Price's construed Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 and Amended § 2255 Motion. (D.I. 38; D.I. 42) The Government filed an Answer in opposition. (D.I. 62) For the reasons discussed, the Court concludes that Claim Three cannot be resolved without an evidentiary hearing pursuant to Rule 8 of the Rules Governing Section 2255 proceedings. Specifically, Movant is entitled to an evidentiary hearing to establish if he did actually direct defense counsel to file a direct appeal on his behalf. Nevertheless, for the reasons set forth below, all other claims in the instant § 2255 Motion will be denied without holding an evidentiary hearing.

## I.    BACKGROUND

In January 2021, an officer with the Wilmington Police Department ("WPD") observed Movant engage in a drug sale to a woman near the intersection of 10th and Pine Streets in Wilmington. (D.I. 33 at 1) Other police officers approached the woman to investigate, and she told them she had just purchased heroin from Movant. (*Id.* at 2) The woman handed a bundle of heroin with a "1990" stamp to the officers. (*Id.*)

WPD officers arrested Movant approximately fifteen minutes later. (D.I. 33 at 2) During a search incident to the arrest, officers recovered from Movant's

jacket a small amount of marijuana, two bundles of heroin marked with the same "1990" stamp, and a loaded firearm. (*Id.*) Movant waived his *Miranda* rights, and admitted that he intended to sell the heroin to earn money to feed his children. He also said he purchased the gun a few months before the incident for his protection. (*Id.*)

In May 2021, the Government filed a three-count Indictment, charging Movant with: (1) knowingly and intentionally possessing with intent to distribute a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C); (2) knowingly and intentionally possessing a firearm, in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (3) possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (D.I. 1; D.I. 2) On October 27, 2021, Movant entered a guilty plea to Counts One and Two. (D.I. 22) The plea agreement also contains the following appellate and post-conviction rights waiver:

> [Movant] knows that he has, and voluntarily and expressly waives, the right to file any appeal, any collateral attack, or any other writ or motion after sentencing – including, but not limited to, an appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, or a motion under 28 U.S.C. § 2255. Notwithstanding the foregoing, [Movant] reserves his right to (1) file an appeal or other collateral motion on the grounds that he received ineffective assistance of counsel; and (2) appeal his sentence if: (a) the government appeals from the sentence, (b) [Movant's] sentence exceeds the statutory maximum for the offense set forth in the United

2

States Code, or (c) the District Court imposes an "upward variance" above the final Sentencing Guideline range that it determines at sentencing.

(D.I. 22 at ¶ 13)  On April 5, 2022, the Honorable Leonard P. Stark sentenced Movant to a total of 70 months incarceration – 10 months on Count One and to the mandatory minimum 60-month term on Count Two.  (D.I. 36)

Movant filed a Motion to Request Reduction/Modification of Sentence on August 3, 2022.  (D.I. 38)  The case was re-assigned to the undersigned's docket on September 12, 2022.  The Court construed the Motion to Request Reduction/Modification of Sentence to be a § 2255 Motion, and Movant subsequently amended the § 2255 Motion.  (D.I. 38; D.I. 42)

## II.    DISCUSSION

Movant's timely filed § 2255 Motion asserts the following four Claims:  (1) defense counsel provided ineffective assistance by failing to file a motion for a mental health evaluation (D.I. 42 at 5); (2) defense counsel provided ineffective assistance by failing to petition the Court for a sentence reduction pursuant to the First Step Act of 2018 (D.I. 42 at 8); (3) defense counsel provided ineffective assistance by failing to file a direct appeal, despite Movant's instruction to do so; and (4) 18 U.S.C. § 924(c) is unconstitutionally vague.

## A. Ineffective Assistance of Counsel Claims

The collateral attack waiver in Paragraph 13 of the Plea Agreement does not preclude Movant from raising a claim of ineffective assistance of counsel. Thus, the Court does not need to consider the validity of the waiver prior to addressing the ineffective assistance of counsel allegations in Claims One, Two, and Three.

As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington,* 466 U.S. 668 (1984). Both *Strickland* prongs must be satisfied in order for a movant to successfully show that defense counsel rendered constitutionally ineffective assistance, and the Court can choose which prong to address first. *See Strickland,* 466 U.S. at 668.

Under the first *Strickland* prong, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. In evaluating an attorney's conduct, a court must avoid "the distorting effects of hindsight" and must "evaluate the conduct from counsel's perspective at the time." *Id.* at 687. Under the second *Strickland* prong, a movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *See id.* at 694; *United States v. Nahodil,* 36 F.3d 323, 326 (3d Cir. 1994). In the context of

4

a guilty plea, a movant satisfies *Strickland*'s prejudice prong by demonstrating

that, but for counsel's error, there is a reasonable probability that he would have

insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474

U.S. 52, 58 (1985). The *Strickland* standard is highly demanding and leads to a

strong presumption that counsel's representation was professionally reasonable.

*See Strickland,* 466 U.S. at 689.

### 1. Claim One: Defense Counsel Failed to File Motion for Mental Health Evaluation

In Claim One, Movant contends that defense counsel provided ineffective

assistance during the plea process by failing to file a motion for a mental health

evaluation before Movant entered a guilty plea. Movant asserts he was suffering

from untreated depression at the time of the plea, and implies[2] that he was unable

to make "voluntary and intelligent" decisions as a result. (D.I. 42 at 5) For the

reasons set forth below, the Court concludes that Claim One does not warrant

relief.

It is well-settled that "[s]olemn declarations in open court carry a strong

presumption of verity" that create a "formidable barrier in any subsequent

---

[2]Movant does not expressly assert that *his* depression rendered *him* incapable of making a voluntary and knowing decision. Instead, he asserts that a "*defendant*" with untreated depression "cannot make intelligent and voluntary decisions and [] cannot assist in his own defense." (D.I. 42 at 5)

5

collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). It is also well-settled that a person's mental illness does not, on its own, provide a reason to question the person's competence to stand trial. *See Jermyn v. Horn*, 266 F.3d 257, 293 (3d Cir. 2001). A person is competent to stand trial when he has a "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding" and possesses "a rational as well as factual understanding of the proceedings against [him]." *Dusky v. United States*, 362 U.S. 402 (1960). "To be legally incompetent, [the person's] mental illness must have rendered [him] unable to consult with [his] attorney or understand the proceedings at the time of trial." *Cherys v. United States*, 552 F. App'x 162 (3d Cir. Jan. 9, 2014).

Here, the transcript of Movant's plea colloquy contains his clear and explicit statements that: (1) although he had been treated for "mental illness or addiction to alcohol or drugs" in the past, he was not receiving treatment at the prison at the time of the plea colloquy (D.I. 62-1 at 5); (2) the last time he received treatment for "any of those things" was "about eight years" prior to the plea colloquy (*Id.* at 5-6); (3) he was not under the influence of any alcohol, medication or narcotic drug of any kind (*Id.* at 6); (4) he understood what was going on during the plea colloquy (*Id.*); and (5) he had "reviewed and discussed [the] charges and case in general with [his] attorney," and was "fully satisfied" his attorney's representation (*Id.* at 6-7). Movant indicated he understood the constitutional rights he was

6

waiving by pleading guilty. (*Id.* at 14, 16-17, 19)  Movant also understood that he faced a potential maximum 20-year sentence for Count One and a potential life sentence for Count Two if convicted at trial, and that  the Court was not required to accept the Government's recommended sentence in the plea agreement.  (*Id.* at 8, 10-11, 15-16)  Finally, Movant admitted his guilt to the charges.  (*Id.* at 20-21)

Movant's unsupported allegation in this proceeding that he was unable to make voluntary and knowing decisions at the time of his plea colloquy due to the fact that he was suffering from depression and was not receiving treatment for that illness fails to provide compelling evidence as to why the statements he made during the plea colloquy should not be presumptively accepted as true.  At no time during the colloquy did Movant assert he was suffering from depression or indicate that his alleged depression affected his ability to enter the plea, and the record does not reflect that any such illness impaired his ability to understand and participate in the proceeding.  Indeed, as indicated by the plea colloquy transcript, Movant represented the opposite to the Court, namely, that he understood what was going on during the colloquy.  (D.I. 62-1 at 6)  And, when explaining that he received treatment "about eight years" ago, Movant did not inform the Court about any need for treatment at the time of the guilty plea.  (D.I. 62-1 at 5-6)

Applying *Blackledge*, the Court finds that Movant is bound by the representations he made during the plea colloquy.  Because Movant's assertions

7

during the plea colloquy belie his current assertion that he was unable to voluntarily and knowingly enter his guilty plea, Movant's argument that defense counsel performed ineffectively by not filing a motion for a mental health evaluation is not well-taken. Counsel's affidavit provides additional support for questioning the merit of Movant's present allegation that defense counsel should have filed a motion for a mental health evaluation. Defense counsel explains that, while he was aware of Movant's past mental health challenges, the "Office of the Federal Public Defender only seeks court funding, by motion, for mental health evaluations if competency is at issue," and defense counsel had no reason to believe Movant was not competent to assist in his representation at the time of the plea hearing and sentencing. (D.I. 62 at 11; D.I. 66 at ¶ 2)

Based on the foregoing, the Court concludes that nothing in the record indicates that Movant was unable to consult with defense counsel or that Movant was unable to understand his guilty plea colloquy. Thus, Movant has failed to demonstrate that defense counsel's failure to file motion for a mental health evaluation constituted deficient performance under *Strickland*'s first prong.

Movant also cannot demonstrate that he was prejudiced by defense counsel's failure to file a motion for a health evaluation. First, the Honorable Leonard P. Stark independently determined that Movant's plea was knowing and voluntary during the plea colloquy. Second, during Movant's sentencing, Judge Stark

considered the information in the presentence report ("PSR"), which contains an

involved assessment of Movant's past mental health issues, (D.I. 34 at 22-23) and

ultimately decided to sentence Movant to the bottom of the guidelines. (D.I. 62-2

at 32-33) In sum, nothing in the transcript of the plea colloquy, the sentencing

colloquy, or Movant's filings indicates that Movant was incompetent. Therefore,

the Court cannot conclude that Movant was prejudiced by defense counsel's failure

to file a motion for a mental health evaluation. *See Godinez v. Moran*, 509 U.S.

389, 401 n. 13 (1993) (noting that, "in any criminal case, a competency

determination is necessary only when a court has reason to doubt the defendant's

competence.").

Accordingly, the Court will deny Claim One.

### 2. Claim Two: Defense Counsel Did Not Request Sentence Reduction Under First Step Act of 2018

In Claim Two, Movant asserts that defense counsel provided ineffective

assistance by not requesting a sentence reduction pursuant to the First Step Act of

2018, Pub. L. No. 115-391 ("FSA"). (D.I. 42 at 8) Movant believes he was

"eligible for a sentence reduction modification because he was convicted of a

covered offense under 21 U.S.C. § 841." (*Id.*)

Claim Two is unavailing. Although the First Step Act reduced the

mandatory minimum sentences for some drug trafficking sentences under 21

U.S.C. §§ 841 and 924, the First Step Act is not applicable to the offenses of conviction in Movant's case because: (1) Movant was not subject to a mandatory minimum sentence for his 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) convictions (*See cf.* D.I. 33 at 1, explaining that there was a mandatory minimum sentence for Movant's § 924(c) conviction); and (2) the First Step Act did not change the mandatory minimum five year sentence for Movant's conviction under § 924(c)(1)(A)(i) because it was his first conviction under that section.[3]

It is well-settled that an attorney does not provide ineffective assistance by failing to raise a meritless argument. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Defense counsel's failure to request an unavailable sentence reduction does not constitute ineffective assistance. Therefore, the Court will deny Claim Two.

---

[3] The First Step Act changed the length of the mandatory minimum sentences applicable on successive counts of § 924(c) such that, after the five year mandatory minimum sentence for the first violation, each subsequent count would carry a mandatory minimum of five years, rather than 25 years each running consecutively. *See* FSA § 403(a); *see also* U.S.S.C. Office of Education & Sentencing Practice, *ESP Insider Express Special Edition: First Step Act*, at 4 (Feb. 2019) https://www.ussc.gov/sites/default/files/pdf/training/newsletters/2019-special_FIRST-STEP-Act.pdf

### 3. Claim Three:  Defense Counsel Did Not File a Direct Appeal Despite Movant's Request

In his form § 2255 Motion, when asked why he did not raise on appeal the issues set forth in Claims One and Two, Movant asserts that he "instructed his counsel to file a direct appeal" but "no direct appeal was filed."  (D.I. 42 at 5, 8)  The § 2255 Motion does not expand upon Movant's bare assertion that he instructed his counsel to file a direct appeal, and he has not filed a supporting memorandum or reply to the Government's Answer.  While Movant's allegation concerning counsel's failure to file a direct appeal is not set out as a separate claim, the Court acknowledges its duty to liberally construe a *pro se* litigant's filing.  *See Haines v. Kerner*, 404 U.S. 519 (1972).  Thus, the Court views the Motion as asserting a third IATC argument that defense counsel was ineffective for not filing a direct appeal.

"[A] more specific version of the *Strickland* standard applies" when a movant alleges that defense counsel provided ineffective assistance by failing to appeal. *Harrington v. Gillis*, 456 F.3d 118, 125 (3d Cir. 2006).  In *Roe v. Flores–Ortega,* 528 U.S. 470, 477 (2000), the United States Supreme Court adopted a two-step analysis to use in failure-to-appeal case when evaluating "deficient performance" under *Strickland*.  The first step is to determine if the movant expressly asked counsel to file a notice of appeal.  If the movant did expressly ask

11

counsel to file an appeal, and counsel failed to do so, counsel is *per se* ineffective because *Strickland* prejudice is presumed. The *Flores–Ortega* Court explained that a "lawyer who disregards specific instructions from the [movant] to file a notice of appeal acts in a manner that is professionally unreasonable[; movant] is entitled to a new appeal without showing that his appeal would likely have had merit." *Id.* at 477. This presumption of prejudice applies even if the movant signed an appeal waiver. *See Garza v. Idaho*, 586 U.S. 232, 246-47 (2019) ("We hold today that the presumption of prejudice recognized in *Flores-Ortega* applies regardless of whether a defendant has signed an appeal waiver.").

If the movant did not clearly tell counsel whether he wanted an appeal filed, the issue becomes whether counsel consulted with the movant about an appeal. *See Flores-Ortega,* 528 U.S. at 478. In this context, "consult" means "advising the movant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the movant's wishes." *Id.* "If counsel has consulted with the movant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the [movant's] express instructions with respect to an appeal." *Id.* However, if defense counsel failed to consult with the movant about an appeal, courts must "ask a second, and subsidiary, question: whether counsel's failure to consult with the [movant] itself constitutes deficient performance." *Flores-Ortega,* 528 U.S. at

12

478. Counsel's failure to consult with the movant constitutes deficient performance when "there is reason to think either (1) that a rational [movant] would want to appeal (for example, because there are nonfrivolous grounds for an appeal), or (2) that this particular [movant] reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. When undertaking this inquiry, a court must consider "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the [movant] seeks an end to judicial proceedings." *Id.* However, "[i]n cases when the [movant] pleads guilty, the court must consider such factors as whether the [movant] received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.* Finally, if a movant shows that defense counsel's failure to consult with him constitutes deficient performance, he must show prejudice by "[demonstrating] that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

As a threshold matter, the Court must determine whether an evidentiary hearing is necessary on the factual issue whether Movant expressly instructed defense counsel to file a notice of appeal. Referring to defense counsel's affidavit where counsel explicitly denies that Movant directed him to file an appeal, the

Government contends that the Court should both deny Claim Three and refrain from holding an evidentiary hearing on the issue because Movant's "allegation is contradicted conclusively by the record." (D.I. 62 at 21)  More specifically, the Government asserts:

> Movant's allegation does not sufficiently contradict [defense counsel's] affidavit to entitle him to an evidentiary hearing on this point.  [Movant] does not allege, for example, when he purportedly instructed [defense counsel] to file an appeal, how he communicated that instruction, or if he even communicated the purported instruction within the time limits that would allow for a timely appeal.  [Defense counsel], in contrast, expressly provides his recollection that [Movant] affirmatively stated that he did not wish to appeal, a fact that is supported by [Movant's] previous, knowing, voluntary, and intelligent decision to agree to an appellate waiver in his plea agreement.

(D.I. 62 at 21)

"The bar for obtaining an evidentiary hearing on a § 2255 motion is low." *United States v. Arrington*, 13 F.4th 331, 336 (3d Cir. 2021).  Section 2255 requires a court to hold an evidentiary hearing on a prisoner's claim "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  "[W]hen a defendant is convicted of a crime and alleges that his lawyer failed to appeal the conviction, and there is a potential factual dispute on this issue, the defendant is entitled to a hearing before the district court to prove that he made the request and that the lawyer failed to honor it.

14

However, a defendant would not be entitled to a hearing if his allegations [in the habeas corpus motion] were contradicted conclusively by the record, or if the allegations were patently frivolous." *Solis v. United States*, 252 F.3d 289, 295 (3d Cir. 2001). "In assessing whether a hearing is necessary, the court must accept the truth of the movant's factual allegations unless they are clearly frivolous or contradicted by the record." *United States v. Valenta*, 2022 WL 265876, at *2 (3d Cir. Jan. 28, 2022). "If ... a claim, when taken as true and evaluated in light of the existing record, states a colorable claim for relief under *Strickland*, then further factual development in the form of a hearing is required *United States v. Haisten*, 50 F. 4th 368, 372-73 (3d Cir. 2022). "[A] hearing must be held if the claim does not conclusively fail either prong of the *Strickland* test." *Id.* at 373. In sum, if the § 2255 motion "allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate to hold an evidentiary hearing." *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005).

The instant IATC Claim involves a communication between Movant and defense counsel that occurred "outside the courtroom and upon which the record could, therefore, cast no real light." *Machibroda v. United States*, 368 U.S. 487, 494-95 (1962). While defense counsel's affidavit contradicts Movant's assertion, it also creates a factual dispute that cannot be clearly resolved by the existing

15

record.  *See Schaeffer v. United States*, 2023 WL 3480892, at *5 (M.D. Pa. May

16, 2023) (noting that defense counsel's affidavit contradicting Schaeffer's

allegations "does not render Shaeffer's allegations clearly frivolous or contradicted

by the record.").  Consequently, as required by Third Circuit precedent, at this

juncture, the Court accepts as truth Movant's contention that he directed defense

counsel to file an appeal.[4]  Since Movant's allegation demonstrates that defense

counsel's performance *may* have been deficient under *Flores-Ortega*, the Court is

required to hold an evidentiary hearing.  *Accord Witthar v. United States*, 793 F.3d

920, 923 (8th Cir. 2015) ("When a district court receives conflicting statements –

one from a § 2255 petitioner and one from her former counsel – the court cannot

make a factual determination based on the relative credibility of these individuals

without the benefit of an evidentiary hearing.  If neither statement is facially

incredible and both contain similar specificity regarding when the alleged appeal-

request took place (or did not take place), counsel's contrary statement simply is

insufficient to support a finding that the petitioner's allegations cannot be accepted

as true.") (cleaned up).  Thus, the Court will address the merits of Claim Three

following the evidentiary hearing.

---

[4]The Court also cannot determine that Movant's allegation is clearly frivolous.

Early in his underlying criminal proceeding, the Court determined Movant was financially unable to retain counsel and appointed an attorney from the Office of the Federal Public Defender for the District of Delaware to represent him. (*See* D.I. 6) Because the Court will be holding an evidentiary hearing in this matter, the Court will direct the Clerk of the Court to appoint CJA counsel to represent Movant during that hearing. *See* Rule 8(c), Rules Governing Section 2255 Proceedings, 28 U.S.C. foll. § 2255 pursuant to 18 U.S.C. § 3006A.

### B. Claim Four: 18 U.S.C. § 924(c) is Void for Vagueness

In his final Claim, Movant argues that 18 U.S.C.§ 924(c) is unconstitutionally vague and that an intent to distribute narcotics cannot support a conviction under § 924(c). In response, the Government contends that Movant's instant allegation is barred by the collateral attack waiver contained in Movant's plea agreement.

As a general rule, courts will enforce a defendant's waiver of his appellate and collateral rights, if it is "entered knowingly and voluntarily and [its] enforcement does not work a miscarriage of justice." *United States v. Mabry*, 536 F.3d 231, 236-37 (3d Cir. 2008), *abrogated other grounds by Garza*, 586 U.S. 232. Courts have an affirmative and "an independent obligation to conduct an

evaluation of the validity of a collateral waiver,"[5] and must consider: (1) whether

the waiver was knowing and voluntary; (2) whether there is an exception to the

waiver which prevents its enforcement; and (3) whether enforcement of the waiver

would cause a miscarriage of justice. *See United States v. Goodson*, 544 F.3d 529,

536 (3d Cir. 2008).

When determining if a waiver of the right to collateral review was knowing

and voluntary, the reviewing court must determine if "the district court inform[ed]

the defendant of, and determine[d] that the defendant under[stood] . . . the terms of

any plea agreement provision waiving the right to appeal or to collaterally attack

the sentence as Federal Rule of Criminal Procedure 11(b)(1)(N) requires." *Mabry*,

536 F.3d at 239. When determining whether a miscarriage of justice would occur

if the waiver were enforced, there is no specific list of circumstances that would

constitute a miscarriage of justice. *Id*. at 242. Rather, the court must apply a

common-sense approach and evaluate "the clarity of the error, its gravity, its

character (e.g., whether it concerns a fact issue, a sentencing guideline, or a

statutory maximum), the impact of the error on the defendant, the impact of

correcting the error on the government and the extent to which acquiesced in the

result." *Id*. at 242-43. To that end, granting an exception to a waiver based on a

---

[5]*Mabry*, 536 F.3d at 238.

miscarriage of justice must be done "sparingly and without undue generosity." *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005).

### 1. Voluntary and Knowing Nature of Waiver

Having reviewed the transcript of the guilty plea hearing, as well as the Parties' submissions, the Court concludes that Movant's waiver of his appellate and collateral review rights was knowing and voluntary. As mandated by *Mabry*, the transcript of the plea hearing reflects that the Court explained the specific terms of the plea agreement and questioned Movant to confirm that he understood the meaning of the provisions. The Court assured that Movant was competent, and that he had a full opportunity to discuss the agreement with counsel and make an informed decision. Notably, the Court reviewed the waiver paragraph with Movant in detail, and explained the rights Movant was relinquishing in exchange for the deal with the Government. This dialogue clearly demonstrates that Movant's waiver was knowing and voluntary.[6]

---

[6]The Court's conclusion about the voluntary and knowing nature of Movant's appellate/collateral waiver is not altered by Movant's contention in Claim One that he was unable to make "voluntary and intelligent" decisions because he was suffering from depression at the time of his plea colloquy. As the Court has previously determined, the record belies Movant's assertion that his plea was involuntary and unintelligent. *See supra* at Section II.A.1.

19

## 2. Scope of the Waiver

The next question is whether Movant's argument in Claim Four falls into any of the exceptions to the waiver. It does not. The Government did not appeal the sentence, and Movant does not challenge his sentence on the ground that the sentence exceeds the statutory limits or that the Court applied an upward variance from the final sentencing guideline range as calculated by the Court. Thus, Movant's instant argument that the provision in § 924(c)(1)(A) applicable to drug trafficking crimes is unconstitutionally vague cannot prevent the enforcement of the waiver.

## 3. Miscarriage of Justice

Finally, the Court must determine if enforcing the waiver will result in a miscarriage of justice. When assessing whether the enforcement of an appellate/collateral attack waiver would result in a miscarriage of justice, courts evaluate factors such as

> the clarity of the error, its gravity, its character (*e.g.*, whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of the correcting the error on the government, and the extent to which the defendant acquiesced in the result.

*United States v. Fazio*, 795 F.3d 421, 426 (3d Cir. 2015).

Enforcing the instant collateral attack waiver to bar consideration of

Movant's argument that 18 U.S.C. § 924(c) is unconstitutionally vague  and his

argument that an intent to distribute narcotics cannot support a conviction under §

924(c) will not result in a miscarriage of justice, because his arguments lack merit.

Claim Four appears to be premised on the fact that the Supreme Court has

invalidated certain portions of 18 U.S.C. § 924 in recent years.  For instance, in

*Johnson v. United States*, 576 U.S. 591 (2015), the Supreme Court declared

unconstitutional the residual clause of § 924(e)(2)(B) – a sentencing enhancement

– which required determining whether certain crimes qualified as "violent

felonies" because they involved "conduct that presents a serious potential risk of

physical injury to another." *Id.* at 593, 606.   Four years later, in *United States v.*

*Davis*, 588 U.S. 445 (2019), the Supreme Court extended *Johnson*'s holding to

invalidate as unconstitutionally vague a similar residual clause in § 924(c)(3)(B),

which defined a "crime of violence" to include any felony that "by its nature,

involves a substantial risk that physical force against the person or property of

another may be used in the course of committing the offense." *Id.* at 448, 470.

Here, Movant's sentence was not enhanced under § 924(e)(2)(B), nor was he

convicted of a crime of violence under § 924(c)(3).  Instead, Movant was convicted

under § 924(c)(1)(A)(i) and his predicate offense was drug trafficking.  Neither

*Johnson* nor *Davis* invalidated the portion of § 924(c)(1)(A) addressing drug

trafficking crimes.  Indeed, "[f]aced with the same question, other district courts

have also held that *Johnson* and *Davis* do not invalidate convictions or sentences

under 924(c) if they are related to a "drug trafficking crime," rather than a "crime

of violence."  *United States v. Price*, 2020 WL 516357, at*7 (W.D. Pa. Jan. 23,

2020) (collecting cases).  Thus, the Court concludes that enforcing the waiver will

not result in a miscarriage of justice.

Accordingly, the Court concludes that Claim Four is barred by the

appellate/collateral attack waiver in Movant's Plea Agreement.

## III.    EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion

filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the

case conclusively show" that the movant is not entitled to relief.  28 U.S.C. § 2255;

*see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *McCoy*, 410

F.3d 124, 131 (3d Cir. 2005);  Rule 8(a), 28 U.S.C. foll. § 2255.  As previously

discussed, the Court will hold an evidentiary hearing to further develop the facts

with respect to Claim Three.  Nevertheless, the Court concludes that an evidentiary

hearing is not warranted for Claims One, Two, and Four, because the  record

conclusively demonstrates that Movant is not entitled to relief under § 2255 for

those Claims.

## IV.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a movant makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court will not issue a certificate of appealability for Claims One, Two, and Four, because reasonable jurists would not debate the Court's conclusion that these three Claims do not warrant relief under § 2255.  The Court will refrain from determining if a certificate of appealability should issue for Claim Three until it makes a final determination following the evidentiary hearing for that Claim.

## V.    CONCLUSION

For the reasons discussed, the Court will deny Claims One, Two, and Four without holding an evidentiary hearing or issuing a certificate of appealability. The Court, however, will reserve judgment on Claim Three until it has held an evidentiary hearing.  The Court will issue an Order consistent with this Memorandum Opinion.